

Leonard Weintraub (LW 7258)
Joseph E. Gasperetti (JG 2120)
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10018
(212) 785-9100
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - -- - - - - - - - - - - x
COBALT MULTIFAMILY INVESTORS I, LLC,      :
COBALT MULTIFAMILY CO. I, LLC,            :
COBALT CAPITAL FUNDING, LLC,              :
and VAIL MOUNTAIN TRUST,                  :
By ANTHONY PADUANO, As Receiver,          :

                    Plaintiffs,           :

          -against-                       :     06 Civ.

LISA ARDEN, RYAN BELLINA, WYMAN BETHEA,   :
JASON BLOCK, JEFF BROOME, BRANDON COHEN,  :
STEVEN COHEN, COMVEST FINANCIAL CORP.,    : **COMPLAINT**
BRIGHAM COOMBS, SUSAN DESIENNA,           :
DTA HOLDINGS LTD., JOHN DUNDON, THOMAS    :
DZWILEWSKI, MICHAEL EISEMANN, EQUITRADE    :
HOLDINGS INC., DAVID FARHI, RUBEN FORTE,   :
TERRENCE GRAY, MAUREEN HEFFERNAN,         :
KRIS HOWARD, JOHN JEFFERSON, SUSAN KAGAN, :
FAREAH KHAN, H. STEPHEN KIRSCHNER,        :
DAVID KIRSCHNER, ALEX KORICK, MICHAEL J. KWON, :
ARTHUR LANDSMAN, JASON MILLER, ALEXANDER  :
MITZNER, SAM NAKHLEH, RALPH RODRIGUEZ,    :
DIANE SANTULLI, DEVORAH SHALEV, ADAM J. STEIN, :
BRETT STITSKY, JARED STITSKY, ADAM SWICKLE, :
THE WISER NOW CORP., ANTHONY TORRICELLI,  :
GREG WEINSTEIN, JENNIFER WILKOV and       :
NATHAN YOUNGS,                            :

                    Defendants.           :
- - - - - - - - - - - - - - - - - - - - - - -- - - - - - - - - x

Plaintiffs Cobalt Multifamily Investors I, LLC ("Cobalt Multifamily"), Cobalt Multifamily Co. I, LLC ("Cobalt Co."), Cobalt Capital Funding, LLC ("Cobalt Funding") and Vail Mountain Trust ("Vail") (collectively, "Cobalt"), by Anthony Paduano as the Court-appointed Receiver for Cobalt ("the Receiver") allege:

### Introduction

1.      On March 27, 2006, the United States Securities and Exchange Commission (the "SEC") commenced an action in the United States District Court for the Southern District of New York, entitled <u>Securities and Exchange Commission v. Cobalt Multifamily Investors I, LLC, Cobalt Multifamily Co. I, LLC, Cobalt Capital Funding, LLC, Mark A. Shapiro, Irving J. Stitsky, William B. Foster and Vail Mountain Trust</u>, 06 Civ 2360 (MBM) (the "SEC Action").

2.      Also on March 27, 2006, agents of the Federal Bureau of Investigation (the "FBI") arrested Mark A. Shapiro ("Shapiro"), Irving J. Stitsky ("Stitsky"), and William B. Foster ("Foster") based on a sealed complaint charging them with conspiracy to commit securities fraud, wire fraud and mail fraud and with running Cobalt as a Ponzi Scheme. <u>United States of America v. Shapiro, Stitsky and Foster</u>, 06 MAG 0397.

3.      On March 28, 2006, Chief Judge Mukasey of the United States District Court for the Southern District of New York issued an order appointing the Receiver on a temporary basis for Cobalt Multifamily, Cobalt Co., Cobalt Funding, and Vail.   On July 20, 2006, the Court issued a further order making that

2

appointment permanent. Cobalt Multifamily, Cobalt Co., and Cobalt Funding, along with other Cobalt-affiliated entities, are collectively referred to herein as "Cobalt".

4.    This action arises out of the Defendants' knowing, intentional, and active participation in:  (a) the illegal and fraudulent offering of unregistered securities by Cobalt Multifamily, one of a network of Cobalt affiliated companies (as defined below) controlled by Shapiro, a convicted felon, Stitsky, also a convicted felon, and Foster, (b) making misrepresentations and omissions in connection with the offering of those unregistered securities and (c) Defendants' wrongful receipt (in the form of "commissions") of portions of the funds obtained from investors.

5.    Each Defendant herein made cold calls and other solicitations to potential investors, seeking to persuade them to invest in Cobalt's Ponzi scheme. From November 2003 through March 2006, Cobalt Multifamily sold in excess of $22,000,000 in illegal unregistered securities to at least 300 unsuspecting investors. Defendants accomplished such sales by making material misrepresentations and omissions in oral statements, written offerings, and marketing materials provided to potential investors, and through boiler room sales tactics.

6.    In connection with such fraudulent scheme, Defendants herein each knowingly misrepresented Cobalt's track record and the fundamental nature of Cobalt's operations, concealed Shapiro's and Stitsky's roles and criminal backgrounds, and promoted the false impression that Foster ran the Cobalt entities.

3

7.      Through this conduct, Defendants engaged, directly or indirectly, in transactions, acts, practices, and courses of business which constitute violations of Sections 5, 12(a) and 17 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C.§§ , 77e, 77l(a) and 77q, and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5. The wrongdoing complained of herein has been deliberate and intentional and with a reckless disregard of the truth.

8.      None of the Cobalt entities ever registered an offering or class of securities under the Securities Act.  Thus, the repeated sales by Defendants of Cobalt Multifamily securities were illegal and in violation of Sections 5 and 12(a) of the Securities Act.

9.      The Receiver brings this action on behalf of Cobalt to recover commissions paid by Cobalt to Defendants totaling in excess of $1,400,000 in connection with the illegal sale of unregistered Cobalt Multifamily securities.  Such "commissions" constitute monies belonging to Cobalt investors that were obtained from them wrongfully.

### Parties

10.     Defendant Lisa Arden is a natural person who, on information and belief, is a citizen of the State of Florida residing in Lighthouse Point, Florida.

11.     Defendant Ryan Bellina is a natural person who, on information and belief, is a citizen of the State of Florida residing in Stuart, Florida.

12.     Defendant Wyman Bethea is a natural person who, on

4

information and belief, is a citizen of the State of New York residing in Queens, New York.

13.   Defendant Jason Block is a natural person who, on information and belief, is a citizen of the State of New York residing in Brooklyn, New York.

14.   Defendant Jeff Broome is a natural person who, on information and belief, is a citizen of the State of New York residing in Jamaica, New York.

15.   Defendant Brandon Cohen is a natural person who, on information and belief, is a citizen of the State of New York residing in Melville, New York.

16.   Defendant Steven Cohen is a natural person who, on information and belief, is a citizen of the State of New York residing in Port Washington, New York.

17.   Defendant Comvest Financial Corp., ("Comvest") is an entity that, on information and belief, is organized under the laws of the State of New York with its principal place of business at 190 Jewis Avenue, Copiague, New York 11726. Comvest, on information and belief, is operated and controlled by Defendants John Dundon and Thomas Dzwilewski.

18.   Defendant Brigham Coombs is a natural person who, on information and belief, is a citizen of the State of Florida residing in Miami, Florida.

19.   Susan DeSienna is a natural person who, on information and belief, is a citizen of the State of New York residing in Hicksville, New York.

20.   Defendant DTA Holdings Ltd., ("DTA") is an entity that, on

information and belief, is organized under the laws of the State of New York with its principal place of business at 1374 Old Northern Boulevard, Roslin, New York 11576. On information and belief, DTA is operated and controlled by Defendant Adam Swickle.

21.    Defendant John Dundon is a natural person who, on information and belief, is a citizen of the State of New York residing in Copiague, New York.

22.    Defendant Thomas Dzwilewski is a natural person who, on information and belief, is a citizen of the State of New York residing in Huntington, New York.

23.    Defendant Michael Eisemann is a natural person who, on information and belief, is a citizen of the State of New York residing in Brentwood, New York.

24.    Defendant Equitrade Holdings Inc., ("Equitrade") is an entity that, on information and belief, is organized under the laws of the State of New York with its principal place of business at 14 Hickory Road, Port Washington, New York 11050. On information and belief, Equitrade is operated and controlled by Defendant Steven Cohen.

25.    Defendant David Farhi is a natural person who, on information and belief, is a citizen of the State of New York residing in Forest Hills, New York.

26.    Defendant Ruben Forte is a natural person who, on information and belief, is a citizen of the State of New York residing in Deer Park, New York.

27.    Defendant Terrence Gray is a natural person who, on information and belief, is a citizen of the State of Texas residing in Houston, Texas.

28.    Defendant Maureen Heffernan is a natural person who, on information and belief, is a citizen of the State of New York residing in Bayside, New York.

29.    Defendant Kris Howard is a natural person who, on information and belief, is a citizen of the State of New York residing in Huntington, New York.

30.    Defendant John Jefferson is a natural person who, on information and belief, is a citizen of the State of New York residing in Bronx, New York.

31.    Defendant Susan Kagan is a natural person who, on information and belief, is a citizen of the State of New York residing in Lawrence, New York.

32.    Defendant Fareah Khan is a natural person who, on information and belief, is a citizen of the State of Florida residing in Miami Beach, Florida.

33.    Defendant David Kirschner is a natural person who, on information and belief, is a citizen of the State of New York, residing in Sayville, New York.

34.    Defendant H. Stephen Kirschner is a natural person who, on information and belief, is a citizen of the State of New York, residing in Sayville, New York.

35.    Defendant Alex Korick is a natural person who, on information and belief, is a citizen of the State of New York residing in Brooklyn, New York.

36.    Defendant Michael J. Kwon is a natural person who, on information and belief, is a citizen of the State of New York residing in Bayside, New York.

37.    Defendant Arthur Landsman is a natural person who, on information and belief, is a citizen of the State of New York residing in Northport, New York.

38.    Defendant Jason Miller is a natural person who, on information and belief, is a citizen of the State of New York residing in Great Neck, New York.

39.    Defendant Alexander Mitzner is a natural person who, on Information and belief, is a citizen of the State of New York residing in Old Westbury, New York.

40.    Defendant Sam Nakhleh is a natural person who, on information and belief, is a citizen of the State of New York residing in Bronxville, New York.

41.    Defendant Ralph Rodriguez is a natural person who, on information and belief, is a citizen of the State of New York residing in Staten Island, New York.

42.    Defendant Diane Santulli is a natural person who, on information and belief, is a citizen of the State of New York residing in Garden City, New York.

43.    Defendant Devorah Shalev is a natural person who, on information and belief, is a citizen of the State of Nevada residing in Las Vegas, Nevada.

8

44.    Defendant Adam J. Stein is a natural person who, on information and belief, is a citizen of the State of New York residing in Amityville, New York.

45.    Defendant Brett Stitsky is a natural person who, on information and belief, is a citizen of the State of New York residing in Mineola, New York.

46.    Defendant Jared Stitsky is a natural person who, on information and belief, is a citizen of the State of Florida residing in Coconut Creek, Florida.

47.    Defendant Adam Swickle is a natural person who, on information and belief, is a citizen of the State of New York residing in Long Beach, New York.

48.    Defendant The Wiser Now Corp., ("Wiser Now") is an entity that, on information and belief, is incorporated under the laws of the State of New York with its principal place of business at 555 Broad Hollow Road, Suite 105, Melville, New York 11747. On information and belief, Wiser Now is operated and controlled by Defendants David Kirschner and H. Stephen Kirschner.

49.    Defendant Anthony Torricelli is a natural person who, on information and belief, is a citizen of the State of New York residing in Albertson, New York.

50.    Defendant Greg Weinstein is a natural person who, on information and belief, is a citizen of the State of New York residing in Syosset, New York.

51.    Defendant Jennifer Wilkov is a natural person who, on information and belief, is a citizen of the State of New York residing in Brooklyn, New York.

52.    Defendant Nathan Youngs is a natural person who, on information and belief, is a citizen of the State of New York residing in New York City, New York.

53.    Lisa Arden, Ryan Bellina, Wyman Bethea, Jason Block, Jeff Broome, Brandon Cohen, Steven Cohen, Comvest, Brigham Coombs, Susan Desienna, DTA, John Dundon, Thomas Dzwilewski, Michael Eisemann, Equitrade, David Farhi, Ruben Forte, Terrence Gray, Maureen Heffernan, Kris Howard, John Jefferson, Susan Kagan, Fareah Khan, David Kirschner, H. Stephen Kirschner, Alex Korick, Michael J. Kwon, Arthur Landsman, Jason Miller, Alexander Mitzner, Sam Nakhleh, Ralph Rodriguez, Diane Santulli, Devorah Shalev, Adam J. Stein, Brett Stitsky, Jared Stitsky, Adam Swickle, Greg Weinstein, Jennifer Wilkov, Wiser Now and Nathan Youngs are collectively referred to herein as "Defendants."

**Jurisdiction and Venue**

54.    This Court has original subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction) because (a) the action is commenced by the Receiver appointed by this Court in the SEC Action, and (b) this action forms part of the same case or controversy as the SEC Action under Article III of the United States Constitution. This Court also has original jurisdiction over Plaintiffs' claims brought under the Securities Act, 15 U.S.C. § 77v(a).

55.    This Court has personal jurisdiction over Defendants, because, on information and belief, Defendants placed telephone calls from Cobalt Capital

Funding's Great Neck, New York and Miami Beach, Florida offices and caused Cobalt Multifamily marketing materials to be sent via the United States Postal Service to prospective investors in this District in connection with offering for sale Cobalt Multifamily securities and soliciting such investors to purchase securities of Cobalt Multifamily.

56.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because (a) the majority of the Defendants reside in this State, (b) at least four Defendants reside in this District, and (c) a substantial part of the events complained of took place in this District. Venue also is proper in this District pursuant to 15 U.S.C. § 77(a) because at least four Defendants reside in this District, and the securities that are the subject of this lawsuit were offered and sold to at least 10 investors who reside in the District.

### The Private Placement Memoranda and Marketing Materials

57.    From in or about November 2003 to on or about March 28, 2006, Defendants solicited and caused more than 300 investors to purchase approximately $22,000,000 of Cobalt Multifamily unregistered securities from Defendants.

58.    In connection with the scheme, Defendants distributed various materials to potential investors. Among those materials were at least two versions of a private placement memorandum which purportedly described the investment being offered. One private placement memorandum was dated July 1, 2004 (the

11

"July 2004 PPM") and a second private placement memorandum was dated December 15, 2004 (the "December 2004 PPM"; collectively, the "2004 PPMs").

59.   Other materials distributed to potential investors encompassed glossy brochures that described Cobalt and some of the properties in which investors would be investing, including properties that Cobalt did not own.

60.   The 2004 PPMs informed prospective investors that Cobalt Multifamily was primarily focused on "the acquisition and development of residential apartment properties ranging in size from approximately 150 to 500 units and vacant land suitable for development of multifamily units."

61.   The 2004 PPMs further falsely represented that Foster "is the owner, President and CEO of Cobalt Financial, Inc." and ''is in charge of overseeing all aspects" of the operations of Cobalt Financial and its "Affiliates," including all Cobalt entities. The July 2004 PPM made no mention of either Shapiro or Stitsky, or their roles at Cobalt.

62.   The December 2004 PPM made no mention of Stitsky, and falsely stated that Shapiro was merely a "consultant" who

> assists in structuring of [sic] the financing for the Cobalt Capital Companies. He has extensive experience in corporate finance and real estate and provides an eye for finding "diamond in the rough" properties. Mr. Shapiro has over twenty years of real estate construction, development and finance experience. He has on his own and on behalf of others, owned, managed, constructed and/or converted over 10,000 apartments and condominium units throughout the United States. He received his undergraduate degree from the University of Miami and a Masters in Finance from Harvard University.

63.  All of the material allegations in the above-referenced paragraph were false and misleading and Defendants knew them to be so or should have known them to be so.

64.  Shapiro was not a Cobalt "consultant." In fact, Shapiro ran Cobalt's day-to-day operations and made all significant business decisions for Cobalt. Foster was Cobalt's President and CEO in name only and at most had a minority ownership interest in Cobalt Financial.

65.  At the time these illegal offerings were made, Shapiro was a felon. In December 1998, Shapiro pleaded guilty to one count of bank fraud and one count of conspiracy to commit tax fraud. He was sentenced to serve thirty months in prison and ordered to pay restitution of $353,896 and a fine of $10,000. See United States v. Mark Shapiro, 98 CR 242 (AVC) (D. Conn.).

66.  On information and belief, Shapiro was released from prison on parole on or about September 24, 2003. Shapiro's conditions of parole prohibited him from, inter alia, (a) committing another crime, and (b) associating with any person convicted of a felony. As is set forth below, Shapiro violated his conditions of parole by committing other crimes and associating with Stitsky, a convicted felon.

67.  Moreover, Shapiro did not own, manage, construct and/or convert more than 10,000 apartments and condominium units throughout the United States. On information and belief, Shapiro had very little experience owning, managing, constructing and/or converting apartments and condominium units.

68.   Additionally, representations about Shapiro's educational background were false.  Shapiro did not attend or receive any degree from Harvard University.

69.   Defendants knew or should have known about the facts alleged in paragraphs 64 to 68 herein, but failed to disclose the truth to potential investors.

70.   Cobalt -- through the brochures and other marketing materials distributed by Defendants -- represented to prospective investors that Cobalt was a nationally recognized real estate investment and property management firm run by real estate professionals with a long and highly successful track record. Such claims were false.

71.   For example, glossy brochures distributed by Defendants to Cobalt investors described Cobalt as "an outgrowth of, and successors to, a group of earlier real estate entities, most notably Capital Construction, Inc." and represent that Cobalt is "comprised of seasoned, business-oriented individuals who have owned, managed and developed more than $2 billion worth of real estate," during the past 25 (or, in some materials, 30) years.  Such claims were false.

72.   To bolster Cobalt's claimed track record, Defendants provided prospective investors with illustrations depicting tombstone advertisements showing the purchase and sale prices for eight extremely profitable "private joint ventures" that purportedly were "sponsored by Cobalt Capital Companies" in the 1990s, generating more than $60,000,000 in profits. All such representations were false, because the Cobalt entities were not incorporated in the 1990s, and none of the

14

Cobalt properties were purchased until 2005. Defendants knew or should have known these facts.

73.    Cobalt investors also were sent a four-page "Cobalt Capital Portfolio Summary" that showed the status and purported appreciated value or sale price of over fifty properties. All but five of the listed properties were purportedly acquired in the 1980s and 1990s and sold by 2003, at extremely impressive returns. The listed "average annual return" ranged from 9% to 204% over periods ranging from one to twelve years, including several with average annual returns of more than 200% in less than two years. Such summary showed profits of millions of dollars. Again, all such representations were false, because none of the Cobalt entities were incorporated until 2003, and none of the Cobalt properties were purchased until 2005.

74.    These representations about Cobalt's history were false and misleading. In fact, Cobalt had no track record; it was a two-year-old start-up company with no operating history. All the Cobalt entities were incorporated in late-2003 or later, and all the personnel involved with the marketing and management of Cobalt, including Shapiro, Stitsky, and Foster, joined the Company within the last two years. Except for two of the numerous properties identified in the "Portfolio Summary," none of the listed properties has ever been owned by Cobalt or a predecessor to Cobalt.

75.    The marketing materials also misrepresented the then current state of Cobalt's business to Cobalt investors. For example, the Portfolio Summary

15

and other materials distributed to Cobalt investors and prospective investors in 2005 indicated that, since 2001, Cobalt owned five properties in Miami Beach (including one formerly known as the Simone Hotel) in various stages of development, that each had appreciated in value and were then collectively worth $43,300,000. In fact, the only properties Cobalt ever owned were acquired in 2005.

76.    Both 2004 PPMs state that the Cobalt Multifamily securities being offered were exempt from registration under the Securities Act because they were only being sold to accredited investors under Regulation D.  Specifically, to be an accredited investor, a person had to have a net worth in excess of $1,000,000 or an annual income in excess of $200,000 (or $300,000 if jointly with a spouse) in each of the last two years, and reasonably expect an income of at least that amount in the current year. However, the Cobalt Multifamily securities were in fact sold to numerous investors who were not accredited investors and who did not meet the financial criteria set forth in Regulation D. Defendants herein knew that the prospective investors they were soliciting were not accredited investors and that the interests offered to them were unsuitable for them.

77.    Contrary to the statements contained in the 2004 PPMs, the Cobalt Multifamily securities were not exempt from registration under the Securities Act. In fact, the Cobalt Multifamily securities were never registered under the Securities Act, although they were required to be.

78.    In exchange for their investment, Cobalt investors were promised an 8% annual return on their investment, which was referred to as a "Priority

16

Return." In addition, Cobalt investors were informed that they would be entitled to receive a share of the profits from the sale or management of properties.

79.    The 2004 PPMs and Cobalt's marketing materials led Cobalt investors to believe that the promised Priority Return would be funded by cash flow from operations and proceeds of the sale or management of properties. Since its inception, Cobalt's only cash flow had been the monies raised from investors. In fact, the promised 8% return was nothing more than a Ponzi Scheme. Many Cobalt investors received distributions, which purportedly represented such 8% return. However, what Cobalt investors were receiving was a portion of new Cobalt investors' investments in Cobalt. Thus, investor funds were being used to pay promised returns, contrary to the representations in the 2004 PPMs.

80.    Defendants knew of the wrongdoing pleaded in the foregoing paragraphs 70 to 79, but failed to disclose such to investors.

### Defendants' Illegal Sale of Cobalt Multifamily Securities to Investors

81.    In order to sell the Cobalt Multifamily securities, Cobalt established an office in Great Neck, Long Island, and later an office in Miami Beach, Florida. The Great Neck and Miami Beach offices were used almost exclusively by Defendants to solicit prospective investors to purchase Cobalt Multifamily securities.

82.    During the period from November 2003 to March 2006, Defendants made thousands of telephone calls, including interstate telephone calls, and mailed marketing materials to prospective investors in New York County and

throughout the United States in connection with the sale of Cobalt Multifamily securities.

83.     Among other things, Defendants herein falsely told investors that:

(a) Cobalt had been in business for two decades or longer, when in truth and fact the Cobalt entities were recently formed and had a minimal operating history and no ability to raise capital legitimately; and

(b) Cobalt owned certain properties described in its marketing materials, including, for example, the Hotel Simone, when in truth and in fact, as the defendants well knew, no Cobalt entity ever owned the Hotel Simone. These false claims were also included in certain marketing materials distributed by Cobalt to prospective investors by Defendants.

84.     Defendants herein did not inform Cobalt investors that Shapiro was a convicted felon who had previously been convicted of bank fraud and conspiracy to commit tax fraud.

85.     Defendants did not inform Cobalt investors of Stitsky's true involvement in Cobalt, his criminal history or his ban from the securities industry. Specifically, in 1998, Stitsky consented to an SEC order finding that he had violated the antifraud provisions of the Securities and Exchange Acts, barring him from association with any broker, dealer, investment company, investment adviser, or municipal securities dealer, and directing that he cease and desist from any future securities law violation. In June 2000, Stitsky was indicted for his role in a subsequent securities manipulation scheme. In August 2001, he pleaded guilty to

criminal charges, including conspiracy to commit securities fraud, and was sentenced to 21 months' imprisonment and a three-year period of supervised release. In the SEC's administrative proceeding against him in that matter, Stitsky was again found to have violated the antifraud provisions of the Securities and Exchange Acts, and ordered to cease and desist from any future securities law violation, and was barred from participating in a penny stock offering and associating with a broker or dealer. In August 1999, Stitsky was indicted on conspiracy to commit tax fraud, money laundering and tax fraud. In August 2001, Stitsky pleaded guilty to conspiracy to commit tax fraud. In August 2001, a criminal information was filed against Stitsky for making false statements, to which he pleaded guilty. In February 2002, Stitsky was sentenced to 33 months in jail and three years' probation for both matters. Defendants failed to inform Cobalt investors of Stitsky's extensive criminal past and his ban from the securities industry.

### The FBI Raid

86.    On or about December 1, 2005, the FBI executed a search warrant at Cobalt's offices in Springfield, Massachusetts, and Great Neck, New York and seized many of Cobalt's documents and records and other materials as part of a federal criminal investigation into Cobalt's activities.

87.    Defendants herein knew that the FBI raided Cobalt at its Great Neck and Springfield Offices and that the FBI seized documents and records and other materials of great concern to investors, but Defendants failed to inform Cobalt investors of the FBI's raid and the actual and potential consequences of such.

19

88.     After the FBI's raid, Defendants inexplicably continued to solicit and sell millions of dollars of Cobalt Multifamily securities to investors.

89.     Defendants financially benefited from the sale of Cobalt Multifamily securities to investors, in the total amount of $1,436,031.49. Defendants were paid the following commissions for selling Cobalt Multifamily securities to investors:

| | |
|---|---:|
| Arden, Lisa | $   1,275.00 |
| Bellina, Ryan | 10,930.00 |
| Bethea, Wyman | 6,800.00 |
| Block, Jason | 7,143.75 |
| Broome, Jeff | 6,800.00 |
| Cohen, Steven | 48,837.60 |
| Comvest | 35,009.00 |
| Coombs, Brigham | 3,546.79 |
| DeSienna, Susan | 37,200.00 |
| DTA | 53,753.58 |
| Dundon, John | 6,723.00 |
| Dzwilewski, Thomas | 4,000.00 |
| Eisemann, Michael | 38,120.00 |
| Equitrade | 122,916.56 |
| Farhi, David | 9,500.00 |
| Forte, Ruben | 98,776.73 |
| Gray, Terrence | 6,000.00 |
| Heffernan, Maureen | 8,075.00 |
| Howard, Kris | 9,342.25 |
| Jefferson, John | 6,050.00 |
| Kagan, Susan | 78,304.45 |
| Khan, Fareah | 9,225.00 |
| Kirschner, H. Stephen | 143,282.57 |
| Korick, Alex | 4,800.00 |
| Kwon, Michael | 48,755.50 |
| Landsman, Arthur | 14,575.00 |
| Miller, Jason | 22,231.84 |
| Mitzner, Alexander | 4,600.00 |
| Nakhleh, Sam | 34,202.89 |
| Rodriguez, Ralph | 7,461.13 |
| Santulli, Diane | 3,750.00 |

| | |
|---|---|
| Shalev, Devorah | 5,250.00 |
| Stein, Adam | 8,212.52 |
| Stitsky, Brett | 28,370.25 |
| Stitsky, Jared | 84,200.00 |
| Swickle, Adam | 33,188.08 |
| Torricelli, Anthony | 1,500.00 |
| Weinstein, Greg | 4,200.00 |
| Wilkov, Jennifer | 2,500.00 |
| Wiser Now | 371,123.00 |
| Youngs, Nathan | 5,500.00 |

90.    The Receiver has asked Defendants to return the "commissions" they wrongly obtained from investors, but the Defendants have refused to do so.

## FIRST CAUSE OF ACTION
### (Sale of Unregistered Securities - Section 12(a)(1) of the Securities Act)

91.    Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 through 90 hereof.

92.    From in or about November 2003 through on or about March 28, 2006, in the Southern District of New York and elsewhere, each Defendant unlawfully offered for sale unregistered securities of Cobalt Multifamily, in violation of section 5 of the Securities Act.

93.    The wrongful and illegal conduct of Defendants set forth above proximately caused injury to Cobalt investors.

94.    By reason of the foregoing, each Defendant is individually liable for each transaction regarding the unregistered Cobalt Multifamily securities, and for disgorgement of the "commissions" received in connection with such sales, as well as statutory damages, attorneys' fees and interest.

21

## SECOND CAUSE OF ACTION
### (Fraudulent Conveyance)

95.   Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 through 94 hereof.

96.   Cobalt was insolvent at the time it paid "commissions" to each Defendant.

97.   As a result of the illegal sale of unregistered securities to investors, Defendants received "commissions" that they should not, as a matter of law, be permitted to retain.

98.   On information and belief, Cobalt's payment of the "commissions" to Defendants was made with the actual intent to defraud Cobalt's creditors and investors.

99.   Accordingly, Defendants are liable to Plaintiffs for their receipt of fraudulent conveyance in the amount of the "commissions" each Defendant received, plus attorneys' fees, costs and interest as allowed by law.


## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

100.  Plaintiffs re-allege and incorporate herein by reference the allegations contained in paragraphs 1 through 99 hereof.

101.  As a result of the illegal sale of unregistered securities to investors, Defendants received "commissions" that they should not, as a matter of law, be permitted to retain.

102.   Accordingly, Defendants are liable to Plaintiffs for unjust enrichment in the amount of the "commissions" each Defendant received, plus attorneys' fees, costs and interest as allowed by law.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against each Defendant, as follows:

A.   On the First Cause of Action, compensatory damages in an amount to be determined at trial, plus attorneys' fees, interest and costs as allowed by law;

B.   On the Second Cause of Action, compensatory damages in an amount to be determined at trial, plus attorneys' fees, interest and costs as allowed by law;

C.   On the Third Cause of Action, compensatory damages in an amount to be determined at trial, plus attorneys' fees, interest and costs as allowed by law; And,

D.   Such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        August 11, 2006

PADUANO & WEINTRAUB LLP

By:_____
Leonard Weintraub (LW 7258)
Joseph E. Gasperetti (JG 2120)
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100

Attorneys for Plaintiffs