UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------x
COBALT MULTIFAMILY INVESTORS I, LLC,   :
COBALT MULTIFAMILY CO. I, LLC,
COBALT CAPITAL FUNDING, LLC,           :
and VAIL MOUNTAIN TRUST,
by ANTHONY PADUANO, as Receiver,       :



                   Plaintiffs,         :   **REPORT & RECOMMENDATION**


        -against-                      :   **06 CV 6172 (KMW)(MHD)**

LISA ARDEN, RYAN BELLINA, WYMAN BETHEA, :
JASON BLOCK, JEFF BROOME, BRANDON COHEN,
STEVEN COHEN, COMVEST FINANCIAL CORP.,  :
BRIGHAM COOMBS, SUSAN DESIENNA,
DTA HOLDINGS LTD., JOHN DUNDON, THOMAS   :
DZWILEWSKI, MICHAEL EISEMANN, EQUITRADE
HOLDINGS INC., DAVID FARHI, RUBEN FORTE, :
TERRENCE GRAY, MAUREEN HEFFERNAN,
KRIS HOWARD, JOHN JEFFERSON, SUSAN       :
KAGAN, FAREAH KHAN, H. STEPHEN
KIRSCHNER, DAVID KIRSCHNER, ALEX KORICK, :
MICHAEL J. KWON, ARTHUR LANDSMAN, JASON
MILLER, ALEXANDER MITZNER, SAM NAKHLEH,  :
RALPH RODRIGUEZ, DIANE SANTULLI,
DEVORAH SHALEV, ADAM J. STEIN, BRETT     :
STITSKY, JARED STITSKY, ADAM SWICKLE,
THE WISER NOW CORP., ANTHONY             :
TORRICELLI, GREG WEINSTEIN, JENNIFER
WILKOV and NATHAN YOUNGS,                :

                   Defendants.          :
-----------------------------------------x

TO THE HONORABLE KIMBA M. WOOD, U.S.D.J.:


        Anthony Paduano, Esq., is the court-appointed receiver for

plaintiffs Cobalt Multifamily Investors I, LLC, Cobalt Multifamily

Co. I, LLC, Cobalt Capital Funding, LLC, and Vail Mountain Trust,

1

which we refer to collectively as "the Cobalt entities." The receiver was appointed after the Securities and Exchange Commission (the "Commission") initiated a lawsuit against the three principals of Cobalt -- Mark Shapiro, Irving Stitsky and William Foster -- for securities fraud. The receiver brought this action to recover commissions that were paid to Cobalt sales employees while the fraud was ongoing.

On November 18, 2011, the receiver moved for summary judgment against David Farhi and for a default judgment against Wyman Bethea. Neither has responded to these motions. All other defendants have settled, have had judgments entered against them, or have had the claims against them voluntarily dismissed by the receiver. (Oct. 28, 2011 letter to the Court from Steven Castaldo, Esq.). For the reasons set forth below, we recommend that both motions be granted.

PROCEDURAL HISTORY

On March 27, 2006, the Commission filed an enforcement action that arose out of a fraudulent scheme perpetrated by Shapiro, Stitsky and Foster. (See Decl. of Anthony Paduano in Supp. of Receiver's Mot. for Summ. J. as to David Farhi ("Paduano Decl.") ¶

2

2). The receiver was appointed on a temporary basis the next day, see Order to Show Cause at 3, 21-23, <u>S.E.C. v. Cobalt Multifamily Investors I, LLC</u>, 06-cv-2360 (Mar. 28, 2006), and his appointment was made permanent by order dated July 20, 2006. <u>See</u> Order at 1, <u>Cobalt Multifamily Investors</u>, 06-cv-2360 (July 21, 2006). Shapiro and Stitsky were both sentenced to 85 years in prison, and Foster was sentenced to three years in prison, all with three years of supervised release. (<u>See</u> Paduano Decl. ¶¶ 5-7 & Exs. D-F (Judgments in <u>United States v. Shapiro</u>, 06-cr-357 (Shapiro J. at 2-3, Oct. 25, 2010; Foster J. at 3-4, Sept. 28, 2010; Stitsky J. at 2-3, July 7, 2010))).

The receiver brought this lawsuit in 2006, asserting three claims against defendants. (Compl. ¶¶ 91-102, Aug. 11, 2006). Defendants are sales employees of the Cobalt entities -- and corporate entities owned by employees -- who solicited investments in the Cobalt entities by means of alleged misrepresentations. (<u>See</u> Compl. ¶¶ 5, 17, 20, 24, 48). The receiver first alleged that defendants had sold unregistered securities, in violation of Section 12(a)(1) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77a, <u>et seq.</u> (<u>Id.</u> ¶¶ 91-94). The receiver's second claim, which he does not pursue on this motion, was for fraudulent conveyance. (<u>Id.</u> ¶¶ 95-99). By his third cause of action, the

receiver sought disgorgement of commissions paid to defendants under the theory that the defendants had been unjustly enriched. (Id. ¶¶ 100-02).

The receiver now moves for summary judgment against defendant David Farhi on the first and third causes of action. (Receiver's Mem. of Law in Support of Mot. for Summ. J. ("Summ. J. Mem.") at 2). Defendant has not responded. The receiver also seeks entry of a default judgment against defendant Wyman Bethea. This defendant has also remained quiescent in the face of that motion.

## ANALYSIS

### A.   The Summary Judgment Motion

#### 1.   Summary-Judgment Standards

Summary judgment will be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of informing the court of the basis for his motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions

4

on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. <u>See</u> Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). In making this judgment, all evidence must be viewed in the light most favorable to the non-moving party, <u>Overton v. N.Y. State Div. of Military & Naval Affairs</u>, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." <u>Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.</u>, 391 F.3d 77, 83 (2d Cir. 2004).

If the non-moving party has the burden of proof as to a particular issue, the movant may satisfy his initial burden by demonstrating the absence of evidence supporting an essential element of the non-moving party's claim. <u>See</u>, <u>e.g.</u>, <u>Repp v. Webber</u>, 132 F.3d 882, 890 (2d Cir. 1997); <u>Gummo v. Village of Depew</u>, 75 F.3d 98, 107 (2d Cir. 1996). If the movant fails to meet his initial burden, the motion will fail even if the opponent does not submit any evidentiary matter to establish a genuine factual issue for trial. <u>See</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 160 (1970); <u>Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 244 (2d Cir. 2004); <u>BBS Norwalk One, Inc. v. Raccolta, Inc.</u>, 117 F.3d 674, 677-78 (2d Cir. 1997).

5

When, as here, a summary judgment motion is unopposed, the movant must nonetheless meet his burdens. See Vt. Teddy Bear, 373 F.3d at 244. The motion may fail if the moving party's submission fails to establish that no material issue of fact remains for trial, Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001), or if the "undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." See Vt. Teddy Bear, 373 F.3d at 244 (internal citation and quotation marks omitted). The non-moving party is not required to defend itself against "an insufficient showing." Amaker, 274 F.3d at 681 (quoting Adickes, 398 U.S. at 161).

## 2.   The Alleged Sale of Unregistered Securities

The receiver alleges that defendants violated Section 12(a)(1) of the Securities Act. (Compl. ¶¶ 91-94). Section 12(a)(1) provides for civil liability for breach of Section 5 of the Securities Act, see 15 U.S.C. § 77l, which prohibits the use of the mails or other means of interstate commerce to offer or sell a security unless it is registered with the Commission or is exempt from registration. See 15 U.S.C. § 77e.

a.   The Elements of a Section 5 Violation

A prima facie case for violation of Section 5 of the Securities Act is comprised of three elements: "(1) [t]hat the defendant directly or indirectly sold or offered to sell securities; (2) that no registration statement was in effect for the subject securities; and (3) that interstate means were used in connection with the offer or sale." S.E.C. v. Universal Express, Inc., 475 F. Supp.2d 412, 422 (S.D.N.Y. 2007) (citing cases), aff'd sub nom. S.E.C. v. Altomare, 300 Fed. App'x 70 (2d Cir. 2008).

Defendant Farhi's conduct satisfies the first element. It is not disputed that he solicited the purchase of units of Cobalt Multifamily from the Great Neck office of Cobalt, where he made phone calls to potential investors. (Paduano Decl. ¶¶ 26-28 & Ex. O (Mar. 26, 2009 Dep. Tr. of Michael Eismann) at 32-34). It is also not disputed that the securities were unregistered, since Cobalt's offering materials indicated as much. The securities were offered through private placement memoranda (each a "PPM") dated December 29, 2003, July 1, 2004, and December 15, 2004. (Paduano Decl. ¶¶ 13-14). Each PPM expressly stated that the securities it offered were unregistered. (See id. Ex. I (Dec. 2003 PPM) at ii; id. Ex. J (July 2004 PPM) at ii; id. Ex. K (Dec. 2004 PPM) at ii).

7

Finally, the receiver satisfies the third element of a Section 5 violation. As noted, Farhhi made telephone calls to potential investors to invite them to purchase Cobalt securities. (Mar. 26, 2009 Eismann Dep. at 32-34). The third element of a Section 5 violation, requiring the use of interstate means in connection with the sale or offering of a security, "is broadly construed to include . . . intrastate telephone calls." S.E.C. v. Softpoint, Inc., 958 F. Supp. 846, 861 (S.D.N.Y. 1997) aff'd, 159 F.3d 1348 (2d Cir. 1998).

### b.   Exceptions to the Registration Requirement

The receiver alleges that the Cobalt securities were not exempt from the registration requirement (Paduano Decl. ¶¶ 19-22; Summ. J. Mem. at 3, 7-8), though his proof on that point is not definitive. That said, it is the defendant's burden to demonstrate the applicability of an exemption, see S.E.C. v. Empire Dev. Group, LLC, 2008 WL 2276629, *7 (S.D.N.Y. May 30, 2008), and defendant, by his silence, fails to do so. We first discuss the application of Regulation D to the Cobalt securities before turning to the receiver's showing regarding the absence of a registration exemption.

In the various PPMs, the Cobalt entities claimed that their securities were exempt from the registration requirement. (See supra, at 7; Dec. 2003 PPM at ii; July 2004 PPM at ii; Dec. 2004 PPM at ii). The December 2003 PPM claimed exemption under Regulation D and Rule 505; the 2004 PPMs claimed exemption under Regulation D and Rule 506.[1] (Id.).

To be exempt from the registration requirement under Rule 505, an offering must have an aggregate offering price not exceeding five million dollars and must be purchased by no more than thirty-five purchasers. 17 C.F.R. § 230.505. Rule 506 has no aggregate offering price cap, and exempts offerings sold to thirty-five or fewer purchasers if "[e]ach purchaser who is not an accredited investor either alone or with his purchaser representative(s) has such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment." 17 C.F.R. § 230.506. The calculation of

---

[1] Under Regulation D, offerings made less than six months apart can be considered a single offering subject to certain criteria; this is referred to as integration. See 17 C.F.R § 230.502. For purposes of this analysis, it is not necessary to decide whether the 2004 offerings would be integrated. However, we think that this would be likely since they offered the same class of security (see July 2004 PPM at i; Dec. 2004 PPM at i), for the same price (id.), and for a similar putative purpose. (See July 2004 PPM at 11-13; Dec. 2004 PPM at 15-17).

the number of purchasers under Rules 505 and 506 excludes accredited investors. 17 C.F.R. § 230.501(e).

The receiver indicates that $22 million of securities were sold to more than thirty-five investors, "many" of whom were not accredited. (Paduano Decl. ¶¶ 20-22). But the receiver does not specify how much money was invested in each offering, and he does not give an exact count of the unaccredited investors. Accordingly, it is unclear whether the December 2003 offering exceeded $5 million[2], whether any offering was sold to more than thirty-five unaccredited investors, or whether all unaccredited investors in the July 1 and December 15, 2004 offerings (whether considered jointly or separately) were capable of evaluating the merits and risks of the investment. Accordingly, the receiver has not definitively established that the size of the offering required that these Cobalt securities be registered, although he has certainly met his initial burden on this point.

We note also that the exemptions that we discuss are unavailable if the Cobalt entities engaged in "general solicitation". See 17 C.F.R. § 230.502(c); S.E.C. v. Tecumseh

---

[2] The December 2003 PPM indicates a "maximum offering" of $2 million. (See Dec. 2003 PPM at i).

Holdings Corp., 2009 WL 4975263, *4 (S.D.N.Y. Dec. 22, 2009)
(stating that a security cannot be exempted if the offeror engages
in general solicitation or advertising); S.E.C. v. Opulentica, LLC,
479 F. Supp.2d 319, 328 (S.D.N.Y. 2007) ("The exemptions from
registration contained in Rules 505 and 506 of Regulation D of the
Securities Act are not applicable because defendants engaged in a
general solicitation."). Cold calling, when enacted on a nationwide
scale, has been found to constitute general solicitation. Tecumseh,
2009 WL 4975263, at *4. And indeed the receiver invokes this
requirement in asserting that the Regulation D exemption is
unavailable. (Summ. J. Mem. at 3, 8). There is mention in the
record of cold calling (see Mar. 29, 2009 Eisemann Dep. at 31-33),
and the receiver proffers records reflecting that more than 300
investors, hailing from thirty states, purchased Cobalt Multifamily
units. (Paduano Decl. ¶ 21 & Ex. M). This proffer also satisfies
the receiver's initial Rule 56 burden to demonstrate the non-
existence of an exemption for these unregistered securities.

### c.    Resolution of the Motion

The receiver has made a prima facie case for a violation of
Section 5 by defendant Farhi. In the absence of any opposition by
defendant, we recommend that the receiver's motion be granted.

11

Once the receiver establishes his prima facie case for a violation of Section 5, the individual defendant bears the burden of demonstrating that a registration exemption applied. See Empire Dev. Group, 2008 WL 2276629, at *7 ("If plaintiff makes out a prima facie case for a Section 5 violation, defendants then bear the burden of proving the applicability of an exemption.") (internal quotation marks and alterations omitted); Universal Express, 475 F. Supp.2d at 422 ("A defendant may rebut a prima facie case by showing that the securities involved were not required to be registered."). By not opposing this motion, defendant Farhi has conceded the factual representations of the receiver pertaining to defendants' failure to comply with section 5 registration requirements and has failed to create a triable issue as to the applicability of an exception to those requirements.

For summary judgment purposes, "[a] fact issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Bessemer Trust Co., N.A. v. Branin, 618 F.3d 76, 85 (2d Cir. 2010) (quoting, inter alia, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Given Farhi's burden to prove that an exemption applies and his failure to rebut the receiver's prima facie case of a violation of Section 5, a reasonable jury could not find for him. See Universal Express, 475

F. Supp.2d at 426 (concluding that summary judgment was appropriate when no reasonable factfinder could find that unregistered securities were subject to an exemption).

It is true that summary judgment standards do not embrace default judgment principles, <u>Vt. Teddy Bear</u>, 373 F.3d at 242, and a party should not be penalized for failing to oppose a motion if the moving party does not present sufficient evidence. <u>Amaker</u>, 274 F.3d at 681 (quoting <u>Adickes</u>, 398 U.S. at 161). But it does not follow that failing to respond to a motion for summary judgment has no negative repercussions; rather, it is a "perilous path." <u>Id.</u> Though it appears conceivable that defendant may have been able to successfully defend himself on this motion, he chose not to do so and therefore failed to rebut the receiver's <u>prima facie</u> case. Accordingly, we recommend that summary judgment be granted on the receiver's first cause of action.

### d.   The Receiver's Request for Disgorgement

The receiver seeks to recover the $10,000.00 in commissions that were paid to defendant Farhi for his sale of unregistered securities. (<u>See</u> Paduano Decl. ¶¶ 2, 29; Summ. J. Mem. at 4, 5). Disgorgement is an "equitabl[e] remed[y] premised on the powers and

discretion of the Court to prevent unjust gain and to deter others." Universal Express, 475 F. Supp.2d at 434. It is well-settled that disgorgement is an appropriate remedy for breach of the federal securities laws. See, e.g., S.E.C. v. Zwick, 2007 WL 831812, *22 (S.D.N.Y. Mar. 16, 2007) aff'd, 317 Fed. App'x 34 (2d Cir. 2008). This is true even when the defendants may not have acted with scienter, as is perhaps the case here; disgorgement is remedial and not punitive. See S.E.C. v. World Gambling Corp., 555 F. Supp. 930, 934 (S.D.N.Y. 1983) (ruling that disgorgement, but not a permanent injunction, was appropriate when the owner and controlling officer of a firm were unaware that a principle trader was selling unregistered securities); S.E.C. v. DiBella, 409 F. Supp.2d 122, 135 (D. Conn. 2006) (finding that disgorgement was proper where the Commission "adequately pled amounts by which the Defendants were allegedly unjustly enriched and the necessary connection between those amounts and the amount sought by disgorgement" even though it had not pled scienter).

Furthermore, this court has indicated that the receiver is an appropriate party to receive the disgorged commissions. See Cobalt Multifamily Investors I, LLC v. Arden, 2010 WL 3791040, *3 (S.D.N.Y. Sept. 9, 2010) ("The salespeople are plainly not entitled to retain such commission payments, and the receiver appears to be

14

a proper person to pursue those funds on behalf of the Cobalt
estate, which in turn will presumably be held responsible for the
ultimate reimbursement of the shareholders."), adopted, 2010 WL
3790915 (S.D.N.Y. Sept. 28, 2010); see also Hays v. Adam, 512 F.
Supp.2d 1330, 1343 (N.D.Ga. 2007) ("[I]f a receiver can recover
Ponzi scheme profits from investors who have done nothing wrong, he
would also be entitled to recover Ponzi scheme profits held by
sales agents like the defendants, who illegally sold unregistered
securities, and without whose efforts the scheme could not have
occurred.").

We have reviewed the documentation upon which the receiver
based his calculation of the disgorgement amount for defendant
Farhi (see Paduano Decl. ¶ 29 & Ex. P), and have confirmed that the
disgorgement sum proposed by the receiver comports with the
documentation. We are not obligated to inquire further into these
figures. See Zwick, 2007 WL 831812, at *22 ("The disgorgement
amount need only be a reasonable approximation of profits causally
connected to the violation . . . Any risk of uncertainty in
calculating disgorgement should fall on the wrongdoer whose illegal
conduct created that uncertainty.") (internal citation and
quotation marks omitted). Accordingly, we recommend that Farhi be
ordered to disgorge $10,000.00.

15

3.   The Receiver's Unjust-Enrichment Claim

The receiver also seeks recovery for Farhi on his third claim, under the common-law theory that defendant was unjustly enriched by receiving commissions from the Cobalt entities. (Summ. J. Mem. at 11-12). This request for relief duplicates the relief to be awarded on the first claim, and, as we have noted in a prior report and recommendation, is not justified under New York law governing the standing of the receiver. (See Report & Recommendation dated Sept. 9, 2011 at 21-24). Accordingly, we do not recommend granting this aspect of the receiver's motion.

B.   The Default Motion

Plaintiff moves separately for a default judgment against defendant Wyman Bethea, who is alleged to have also participated in cold-calling potential investors or engaging in other solicitation techniques on behalf of the Cobalt entities. (Compl. ¶¶ 5, 82). Defendant Bethea was served with the complaint, but failed to answer or otherwise respond to it, and has not opposed the current motion. (Decl. of Steven Castaldo in Supp. of Receiver's App. for Default J. as to Bethea ("Castaldo Decl.") ¶¶ 3-5 & Ex. 2). For that reason, and because the complaint pleads a viable set of

16

claims against him, entry of a default is fully warranted. (<u>See</u>, <u>e.g.</u>, Report & Recommendation dated Sept. 9, 2010 at 4-6).

Plaintiff also seeks entry of judgment against Bethea in the amount of $6,800.00, representing disgorgement of the commissions that he allegedly received from the Cobalt entities for his sales achievements. (Castaldo Decl. ¶¶ 7-8 & Ex. 3). Again, we have reviewed plaintiff's evidentiary submissions regarding the amount of these commissions, and they support the receiver's request. Accordingly, we recommend that judgment be entered in this amount against Mr. Bethea.

C.   <u>Prejudgment Interest</u>

The receiver requests prejudgment interest with respect to both Farhi and Bethea. Specifically with respect to Bethea, the receiver requests interest at a rate of nine percent, pursuant to N.Y. C.P.L.R. § 5001.

A court has wide discretion in both determining whether to award prejudgment interest and in what interest rate to apply. Factors relevant to either analysis include "(1) 'the need to fully compensate the wronged party for actual damages suffered' (2)

17

'considerations of fairness and the relative equities of the award,' (3) 'the remedial purpose of the statute involved,' and (4) 'such other general principles as are deemed relevant by the court.'" Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp., 689 F. Supp.2d 585, 617 (S.D.N.Y. 2010) (quoting Jones v. Unum Life Ins. Co of Am., 223 F.3d 130, 139 (2d Cir. 2000). Fendi sets forth a detailed analysis of the standard and methods of calculation. Based on the above factors and for the reasons stated in Fendi, we conclude that prejudgment interest is appropriate in this case.

With respect to the rate of interest, we rely again on the analysis in Fendi, where this court noted, in the context of a disgorgement order, that the Second Circuit has approved use of the federal statute governing the underpayment of taxes, 26 U.S.C. § 6621, because it "reflects what it would have cost to borrow the money from the government and therefore reasonably approximates one of the benefits the defendant derived from its fraud." Fendi, 689 F. Supp.2d at 619 (quoting S.E.C. v. First Jersey Secs., Inc., 101 F.3d 1450, 1476 (2d Cir. 1996). We agree with the analysis set forth there and find that the appropriate prejudgment interest rate to use in calculating the prejudgment interest in this case is that set forth in 26 U.S.C. § 6621(a)(2). We therefore recommend that

18

the court award prejudgment interest to plaintiffs at that rate.

CONCLUSION

For the reasons set forth above, we recommend that the receiver's motions for summary judgment against David Farhi and for a default judgment against Wyman Bethea be granted to the extent noted, and that judgments be entered against them in the respective amounts of $10,000.00 and $6,800.00, plus prejudgment interest under 26 U.S.C. § 6621(a)(2).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to the Report and Recommendation portion of this submission. See also Fed. R. Civ. P. 6(a), 6(d). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Kimba M. Wood, Room 1910, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir.

1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 150-55 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986).


**DATED:  New York, New York**
         **August 14, 2012**



                    **RESPECTFULLY SUBMITTED,**

                    _____

                    **MICHAEL H. DOLINGER**
                    **UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Report and Recommendation have been
mailed today to:

Anthony Paduano, Esq.
Leonard Weintraub, Esq.
Steven Castaldo, Esq.
Paduano & Weintraub
1251 Avenue of the Americas, 9th Floor
New York, NY 10020

Mr. Wyman Bethea
216-33 113th Drive
Queens, NY 11429

Mr. David Farhi
6837 108th Street, Apartment 4L
Forest Hills, NY 11375