UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

COBALT MULTIFAMILY INVESTORS I, LLC, et al.,

                            Plaintiffs,                                    <u>OPINION & ORDER</u>
                                                                 06-CV-6172 (KMW) (MHD)

        -against-

LISA ARDEN, et al.,

                            Defendants.
------------------------------------------------------------------X

KIMBA M. WOOD, USDJ:

        The court-appointed receiver (the "Receiver") for Plaintiffs Cobalt Multifamily Investors I, LLC, and its related entities (collectively, "Cobalt") filed this action to recover commissions paid to Cobalt sales employees while Cobalt was engaged in securities fraud.  Defendant Brett Stone (f/k/a Brett Stitsky) ("Defendant") moves for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c).  For the reasons stated below, Defendant's motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND

        This case is related to an enforcement action filed by the Securities and Exchange Commission (the "SEC") in March 2006.  *See S.E.C. v. Cobalt Multifamily Investors I, Inc.*, 06-CV-2360 (S.D.N.Y. complaint filed March 27, 2006) [hereinafter the "*SEC Enforcement Action*"].  The SEC's action arose out of a fraud perpetrated by Cobalt's principals—Mark A. Shapiro, Irving J. Stitsky, and William B. Foster (collectively, the "Cobalt Principals")—who allegedly "issued numerous false and misleading private placement memoranda and brochures," "engaged in a widespread cold-calling scheme to persuade members of the public to invest millions of dollars in the Cobalt entities," and "then siphoned off much of the invested funds for their own personal use, and for other fraudulent purposes."  *SEC Enforcement Action*, 542 F. Supp. 2d 277, 279 (S.D.N.Y. 2008) (Wood, J.).  In a criminal case charging the Cobalt Principals with the same conduct, all three were

1

found guilty on substantive and conspiracy counts of securities fraud, wire fraud, and mail fraud.  *See United States v. Shapiro*, 06-CR-357 (S.D.N.Y. Nov. 23, 2009).

In the *SEC Enforcement Action*, Judge Mukasey appointed Anthony Paduano to act as temporary Receiver for Cobalt.  *See SEC Enforcement Action*, Dkt. No. 2 at 21–24 (S.D.N.Y. March 25, 2006).  On July 20, 2006, Judge Mukasey made the Receiver's appointment permanent.  *See id.*, Dkt. No. 56 at 1 (S.D.N.Y. July 20, 2006).

In August 2006, the Receiver filed this suit against alleged sales employees of Cobalt.  The Receiver states that the Cobalt Principals' fraud was a Ponzi scheme, in which Cobalt's only cash flow was money raised from investors.  *See* Compl. ¶¶ 5, 79.  The Receiver contends that the sales employees were knowing participants in the scheme.  *See id.* ¶ 4.  According to the Receiver, the sales employees, including Defendant, "solicited and caused more than 300 investors to purchase approximately $22,000,000 of Cobalt Multifamily unregistered securities."  *Id.* ¶¶ 57, 82.  The Receiver alleges that, in doing so, the sales employees knowingly made numerous material misrepresentations to potential investors.  *See id.* ¶¶ 4–6, 58–80, 83–85.  The sales employees, including Defendant, purportedly received investor funds in the form of sales commissions.  *See id.* ¶ 89.  These totaled more than $1.4 million, including approximately $30,000 allegedly received by Defendant.  *See id.*  The Receiver contends that these commissions "constitute monies belonging to Cobalt investors that were obtained from them wrongfully."  *Id.* ¶ 9.

The Receiver's first cause of action is brought pursuant to Section 12(a)(1) of the Securities Act of 1933 ("Securities Act") and alleges that Defendant unlawfully offered for sale unregistered securities, in violation of Section 5 of the Securities Act.  *See id.* ¶¶ 91–94.  The Receiver's second cause of action contends that the monies received by Defendant and his fellow sales employees were fraudulent conveyances.  *See id.* ¶¶ 95–99.  The Receiver's third and final cause of action is for unjust enrichment.  *See id.* ¶¶ 100–102.

This action has been resolved as to all of the defendants named in the Receiver's complaint, with the exception of Defendant and his brother, Jared Stone (f/k/a "Jared Stitsky").  Default judgments were entered against Defendant and his brother in 2010, but the Court vacated the judgments in September 2013, after finding that Defendant and his brother had not been served.  *See* Dkt. No. 207.  The Court then granted the Receiver an extension of time for service.  *See Cobalt Multifamily Investors I, LLC v. Arden*, 06-CV-6172, 2013 WL 5780810, at *1 (S.D.N.Y. Oct. 24, 2013) (Wood, J.).  After executing a waiver of service, *see* Dkt. No. 214, Defendant filed an Answer, *see* Dkt. No. 225, and subsequently moved for judgment on the pleadings, *see* Dkt. No. 243.

## II.   LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is decided under the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009).  The Court thus "accept[s] all factual allegations in the complaint as true and draw[s] all reasonable inferences in plaintiff's favor."  *In re Thelen LLP*, 736 F.3d 213, 218–19 (2d Cir. 2013).  To survive a Rule 12(c) motion, the "'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Johnson*, 569 F.3d at 44 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.   DISCUSSION

Defendant raises a number of arguments against the Receiver's first cause of action, in particular that the Receiver lacks standing to bring a claim under Section 12 of the Securities Act.  Defendant also contends that the Receiver's claims are barred by the doctrine of *in pari delicto* and the related rule of standing established by the Second Circuit in *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991).  The Court concludes that the Receiver lacks standing to bring his Section 12 claim, but that the Receiver's second and third causes of action are not barred by *in pari delicto* or *Wagoner*.

3

### A.  Law of the Case

As an initial point, the Court rejects the Receiver's argument that the Court's prior rulings in this case are controlling against Defendant under the law-of-the-case doctrine.  Under the law-of-the-case doctrine, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case."  *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991); *see also Arizona v. California*, 460 U.S. 605, 618 (1983) (explaining that the law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case").  A court will "adhere to its own prior rulings in a given case absent cogent or compelling reasons to deviate, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Uccio*, 940 F.2d at 758 (internal quotations omitted).

The law-of-the-case doctrine, however, should not bind Defendant to decisions made in this action before Defendant was properly served and made a party.  "[A] party joined in an action after a ruling has been made should be free to reargue the matter without the constraints of law-of-the-case analysis."  18B Charles Alan Wright et al., *Federal Practice & Procedure* § 4478.5 (2d ed. updated April 2014); *see, e.g.*, *Bagola v. Kindt*, 131 F.3d 632, 637 (7th Cir. 1997) ("The law of the case doctrine should not be read so rigidly that it precludes a party from raising an argument that it had no prior opportunity to raise.").  The Court will thus resolve Defendant's arguments on the merits, even to the extent that Defendant's arguments conflict with earlier rulings by the Court in this action.

### B.  The Receiver Lacks Standing To Assert Its Section 12 Claim

The Receiver's first cause of action alleges a violation of Section 5 of the Securities Act, 15 U.S.C. § 77e ("Section 5"), and is brought pursuant to Section 12 of the Securities Act, 15 U.S.C. § 77*l* ("Section 12").  Section 12(a)(1) provides that "[a]ny person who … offers or sells a security in violation of [Section 5] … shall be liable … *to the person purchasing such security from him*."  15 U.S.C. § 77*l* (emphasis added); *see also Pinter v. Dahl*, 486 U.S. 622, 644 (1988) ("The purchase requirement

clearly confines § 12 liability to those situations in which a sale has taken place."); *Duffy v. Ranger Sec. Corp.*, 346 F. Supp. 1401, 1405 (E.D.N.Y. 1972) ("For plaintiffs to assert a cause of action under Section 12 … of the Securities Act, they must have purchased some of the securities offered to the public."). The Receiver's complaint, however, does not allege that the receivership entities purchased any of the unregistered securities at issue. Rather, the Receiver argues that it has "broad authority" to bring this action to benefit Cobalt's investors. *See* Mem. of Law in Opp'n 15–17 [Dkt. No. 244]. The Court finds this argument unavailing and thus dismisses the Receiver's first cause of action.

Although "[r]eceivers appointed at the SEC's request are equipped with a variety of tools to help preserve the status quo," their power "is not without limits." *Eberhard v. Marcu*, 530 F.3d 122, 131 (2d Cir. 2008) (internal quotations omitted). In particular, "the authority of a receiver is defined by the entity or entities in the receivership"; a receiver may commence lawsuits, but it generally "'stands in the shoes of the corporation and can assert only those claims which the corporation could have asserted.'" *Id.* at 132 (quoting *Lank v. New York Stock Exch.*, 548 F.2d 61, 67 (2d Cir. 1977)). Even though the Receiver brings its Section 12 claim with the admirable goal of obtaining money to compensate defrauded investors, the Receiver cannot assert claims belonging to those outside the receivership entities (*i.e.*, investors) simply because he was appointed "for [their] benefit." 15 U.S.C. § 78u(d)(5). The Court's order appointing the Receiver to, among other things, "protect this Court's ability to award equitable relief in the form of disgorgement of illegal profits from fraud, and civil penalties," *SEC Enforcement Action*, Dkt. No. 2 at 22 (S.D.N.Y. March 25, 2006), defined the Receiver's duties and purpose, not his powers.

Other courts have similarly rejected Section 12 claims filed by receivers (or those in similar roles), even those appointed following SEC enforcement actions. *See Glusband v. Fittin Cunningham Lauzon, Inc.*, 582 F. Supp. 145, 149–50 (S.D.N.Y. 1984) (Sprizzo, J.) ("Because [the receivership entity] was not the purchaser of the limited partnership interests, [the receivership entity], and hence

plaintiff, as its receiver, has no claim against defendants under sections 5(a), 5(c) or 12(1)."); *Canut v. Lyons*, 450 F. Supp. 26, 27–29 (C.D. Cal. 1977) (holding that a conservator for various entities used in a Ponzi scheme could not bring a Section 12 claim against, among others, individuals alleged to have been involved in the sale of fraudulent partnership interests, because the entities were not purchasers of the partnership interests); *cf. Lank*, 548 F.2d at 66–67 (rejecting a receiver's claim under Section 6 of the Exchange Act where the claim did not belong to an entity for which the receiver was appointed, even though the recovery might "benefit public investors"); *Thomas v. Roblin Indus., Inc.*, 520 F.2d 1393, 1394, 1396 (3d Cir. 1975) (agreeing with the district court's holding that the "plaintiff trustee [of a bankrupt corporation], not being a purchaser or representing a purchaser of the stock in question, lacked standing to assert" a Section 12 claim against the corporation's former majority stockholder).[1]

## C.   Neither *in Pari Delicto* nor *Wagoner* Bars the Receiver from Recovering Fraudulent Transfers

The Receiver's second and third causes of action seek the return of money that the Receiver alleges was fraudulently transferred from the receivership entities to Defendant by Cobalt's principals.  The Court finds that, under New York law, neither the principle of *in pari delicto* nor the *Wagoner* rule bars the Receiver from seeking to set aside the alleged fraudulent transfers.

The doctrine of *in pari delicto* "mandates that the courts will not intercede to resolve a dispute between two wrongdoers."  *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 950 (N.Y. 2010); *see also In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 63 (2d Cir. 2013) ("Under New York law, one wrongdoer may not recover against another." (internal footnote omitted)).  The related *Wagoner* rule derives from the Second Circuit's holding in *Shearson Lehman Hutton, Inc. v. Wagoner* that, under New York law, "[a] claim against a third party for defrauding a corporation with the cooperation of

---

[1]       Because the Court dismisses the Receiver's first cause of action for lack of standing, it need not address Defendant's alternative arguments for dismissing the first cause of action.

management accrues to creditors, not to the guilty corporation."  944 F.2d at 120.  *Wagoner*

explained that, because a bankruptcy "trustee stands in the shoes of the bankrupt corporation" and

"may only assert claims held by the bankrupt corporation itself," "when a bankrupt corporation has

joined with a third party in defrauding its creditors, the trustee cannot recover against the third party

for the damage."  *Id.* at 118.  *Wagoner* thus barred a trustee from asserting claims that the defendant

brokerage firm "aided, abetted, and unduly influenced" the wrongdoer corporate principal.  *Id.* at

119; *see also, e.g.*, *In re Bernard L. Madoff*, 721 F.3d at 64 (trustee could not bring claims that defendant

financial institutions aided and abetted the fraud); *In re Bennett Funding Group, Inc.*, 336 F.3d at 96, 99–

102 (2d Cir. 2003) (trustee barred from suing company's lawyers and an accounting firm "on the

theory that they should have detected the fraud"); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085,

1092 (2d Cir. 1995) (same for trustee's suit against company's lawyers and accountants).[2]

The rationale for the *Wagoner* rule "derives from the fundamental principle of agency that the

misconduct of managers within the scope of their employment will normally be imputed to the

corporation."  *Wight v. BankAmerica Corp.*, 219 F.3d 79, 86–87 (2d Cir. 2000).  The misconduct of the

debtor's managers is then imputed to the trustee because, "innocent as he may be, he acts as the

debtor's representative."  *In re Bernard L. Madoff*, 721 F.3d at 63.  The *Wagoner* rule is thus "essentially

an application of the 'in pari delicto' rule."  *Global Crossing Estate Representative v. Winnick*, 04-CV-

2558, 2006 WL 2212776, at *12 n.16 (S.D.N.Y. Aug. 3, 2006) (Lynch, J.).

Whereas *Wagoner* concluded that a trustee's claim "against a third party for defrauding a

corporation with the cooperation of management accrues to creditors, not to the guilty

corporation," 944 F.2d at 120, courts have treated fraudulent transfer claims differently.  Many

courts have reasoned that, when a receiver sues to recover funds improperly diverted from the

---

[2]      Thus, *in pari delicto* and *Wagoner* applied to the Receiver's suit against three law firms that allegedly "assisted the Cobalt Principals in committing investor fraud."  *Cobalt Multifamily Investors I, LLC v. Shapiro*, 857 F. Supp. 2d 419, 424 (S.D.N.Y. 2012) (Wood, J.)

corporation during a Ponzi scheme, the corporation is itself acting as a creditor. Similarly, New York courts have historically held that a receiver may sue to set aside fraudulent transfers, even though the corporation, if it were suing in its own right (as opposed to having the receiver sue on the corporation's behalf), would be prevented from doing the same.

In *Scholes v. Lehmann*, the Seventh Circuit held that a receiver that represented corporations used by a Ponzi principal to perpetrate his scheme, as is the case here, had standing to recover fraudulent transfers. *See* 56 F.3d 750, 753–54 (7th Cir. 1995). *Scholes* explained that "[t]he appointment of the receiver removed the wrongdoer" and thus "[f]reed" the corporations "from his spell," at which point "they became entitled to the return of the moneys … that [the Ponzi principal] had made the corporations divert to unauthorized purposes." *Id.* Recently, in *Eberhard*, the Second Circuit expressly endorsed the Seventh Circuit's reasoning in *Scholes*. *Eberhard* explained that the transfers made by the corporations in *Scholes* "were, in essence, coerced" by the wrongdoer that controlled them. 530 F.3d at 132 (citing *Scholes*, 56 F.3d at 755). The corporation thus "becomes the creditor in the coerced transaction and a receiver for the coerced corporation has standing to claw back the transfers." *Carney v. Montes*, 12-CV-183, 2014 WL 671263, at *8 (D. Conn. Feb. 21, 2014) (discussing *Eberhard*).

*Eberhard* addressed the effect of a receivership's scope on a receiver's standing to bring a fraudulent conveyance claim under New York's Debtor and Creditor Law, and it held that "a receiver's standing to bring a fraudulent conveyance claim will turn on whether he represents the transferor only or also represents a creditor of the transferor." *Eberhard*, 530 F.3d at 133. Hence, as was the case in *Eberhard*, and unlike here and in *Scholes*, a receiver appointed with authority over the assets of the individual transferor only—and not the entities used by the transferor to commit his fraud—lacks standing to bring fraudulent conveyance claims on the transferor's behalf. *Id.* *Eberhard* noted, though, that if the corporate entities in *Eberhard* had "remained within the [receiver's] estate and established creditor status, the Receiver would have represented a creditor of [the transferor],

8

and as in *Scholes*, would have met the standing requirement imposed by [New York's Debtor and Creditor Law]." 530 F.3d at 134 n.11. *Eberhard* thus strongly suggests that, "[i]n the Second Circuit, when transfers are made by a corporation that is dominated by the wrongdoer, a receiver appointed to recover assets for the receivership entity—rather than for a wrongdoer who manipulated the dominated entity—has standing to bring claims on the corporation's behalf" to recover the fraudulent transfers. *Carney*, 2014 WL 671263, at *8. Many other courts have likewise held that a receiver appointed for corporations used in a Ponzi scheme has standing to recover money fraudulently transferred from the corporation during the scheme. *See, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190–92 & nn.4–5 (5th Cir. 2013) (collecting cases); *Carney*, 2014 WL 671263 at *7 n.7 (same).

Similarly, New York courts have historically concluded that a receiver for a corporation may sue to set aside fraudulent transfers, even when the receivership entity itself might have been barred from doing so. Over a century ago, the New York Court of Appeals explained that:

> The general rule is well established that a receiver takes the title of the corporation or individual whose receiver he is, and that any defense which would have been good against the former, may be asserted against the latter. But there is a well recognized exception which permits a receiver of an insolvent individual or corporation, in the interest of creditors, to disaffirm dealings of the debtor in fraud of their rights.

*Pittsburg Carbon Co. v. McMillin*, 23 N.E. 530, 531 (N.Y. 1890); *see also Attorney Gen. v. Guardian Mut. Life Ins. Co.*, 77 N.Y. 272, 275 (1879) (stating that the receiver of an insolvent corporation "may disaffirm and maintain an action as receiver to set aside illegal or fraudulent transfers of the property of the corporation, made by its agents or officers, or to recover its funds or securities invested or misapplied"). Although these statements were made before New York's Debtor and Creditor Law was enacted in 1925, *see Eberhard*, 530 F.3d at 130, the Second Circuit has explained that the Debtor and Creditor Law's statutory predecessors, like the modern statute, provided that only creditors had standing to void a fraudulent conveyance, *id.*; *see also Bernheim v. Burden*, 1 N.Y.S.2d 689, 689–90

9

(App. Div. 1938) ("[A]n action is … maintainable by a receiver to set aside a fraudulent conveyance under the Debtor and Creditor Law."); 91 N.Y. Jur. 2d Receivers § 87 ("The permanent receiver of a corporation may … bring an action or institute a proceeding to set aside fraudulent transfers." (citing *Guardian Mut. Life Ins.*, 77 N.Y. 272)).  In fact, "[i]n most states, the receiver of an insolvent corporation may sue to set aside fraudulent conveyances made by the corporation."  16 Fletcher Cyc. Corp. § 7848; *see also* 2 Clark on Receivers § 362 (3d ed. 1959) (citing *McMillin*'s statement as a general proposition); *cf. Texas & P. Ry. Co. v. Pottorff*, 291 U.S. 245, 260–61 (1934) ("It is the duty of the receiver of an insolvent corporation to take steps to set aside transactions which fraudulently or illegally reduce the assets available for the general creditors, even though the corporation itself was not in a position to do so."); *Lank*, 548 F.2d at 67 (noting that "a receiver could sue a transferee to recover a fraudulent transfer made by the corporation, even though the corporation itself could not").

Consistent with this historic treatment of a receiver's standing to bring fraudulent transfer actions, New York courts have applied *in pari delicto* to bar a liquidator's suit against a third-party auditor for negligence, *see Bullmore v. Ernst & Young Cayman Islands*, 861 N.Y.S.2d 578, 581–86 (Sup. Ct. 2008), but have held that the defense does not prevent a trustee "from seeking to recoup overpayments to benefit innocent investors," *Williamson v. Stallone*, 905 N.Y.S.2d 740, 752–53 (Sup. Ct. 2010).  *Williamson* explicitly distinguished *Bullmore* on its facts, noting that, in *Bullmore*, "the claims were against auditors and sought tort damages," whereas in *Williamson*, the trustee sought merely "to recoup overpayments."  *Id.*

Here, the Receiver represents the corporate entities used by the Cobalt Principals to perpetrate their scheme.  The Receiver thus has standing to bring claims to recover the alleged fraudulent transfers from the entities for which he was appointed, *see Eberhard*, 530 F.3d at 132–34;

*Scholes*, 56 F.3d at 753–54, and he is not barred from doing so by *in pari delicto* or *Wagoner, see Williamson*, 905 N.Y.S.2d at 752–53; *cf. McMillin*, 23 N.E. at 531.[3]

## IV.   CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleadings is GRANTED in part and DENIED in part.  *See* Dkt. No. 243.

The Receiver recently sought leave to amend its complaint.  *See* Dkt. No. 264.  If the Receiver seeks to make additional amendments to its complaint in light of this decision, it may refile its motion for leave to amend by September 22, 2014.

Also by September 22, 2014, the Receiver shall file a letter stating what ground, if any, exists for not dismissing the first cause of action against Defendant Jared Stone, as well, for the reasons stated in this decision.  Defendant Jared Stone may reply to the Receiver's letter by September 29, 2014.

SO ORDERED.

Dated:        New York, New York
              September 11, 2014

_____/s/_____
Kimba M. Wood
United States District Judge

---

[3]        Defendant complains that the Receiver relies on New York's Debtor and Creditor Law for his fraudulent conveyance claim, even though the Complaint makes no mention of the law applicable to that cause of action.  "[U]nder the Federal Rules of Civil Procedure," however, "a complaint need not pin plaintiff's claim for relief to a precise legal theory."  *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011).  "Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument."  *Id*; *see also Newman v. Silver*, 713 F.2d 14, 15 n.1 (2d Cir. 1983) (explaining that "the nature of federal pleading … is by statement of claim, not by legal theories").  Nonetheless, in light of Defendant's *pro se* status, the Court will permit Defendant to file a renewed motion for judgment on the pleadings against the Receiver's fraudulent conveyance claim, to the extent that he believes grounds exist for its dismissal beyond the *in pari delicto* and *Wagoner* arguments rejected here.